UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL A. HURLEY and
CAROL J. HURLEY,

Plaintiffs,

v.

DITECH FINANCIAL LLC,

Defendant.

Case No. 16-cv-1541-pp

---

**ORDER GRANTING MOTION TO DISMISS (DKT. NO. 15)**

---

## I. INTRODUCTION

Plaintiffs Michael and Carol Hurley have filed an amended complaint against defendant Ditech Financial LLC, alleging violation of loss mitigation regulations, equitable estoppel, interference with contract, and violation of Wis. Stat. §224.77. Dkt. No. 14. The defendant filed a motion to dismiss for failure to state a claim. Dkt. No. 15. For the reasons explained below, the court grants the motion to dismiss.

## II. BACKGROUND

On March 4, 2014, the defendant obtained a default foreclosure judgment against the plaintiffs. Dkt. No. 14 at ¶4; Dkt. No. 17 at 1. The sheriff's sale occurred nine months later. Dkt. No. 16 at 2; Dkt. No. 16-1. On September 15, 2015—nine months after the sheriff's sale—the plaintiffs asked the defendant for a loan modification. Dkt. No. 14 at ¶7. The defendant denied

1

the request the next day, and filed a motion to confirm the sheriff's sale. Id. at ¶8. The plaintiffs objected to that motion. Id. at ¶10.

Two months after the plaintiffs first asked for the loan modification, the defendant inquired whether the plaintiffs were still interested in the modification. Id. at ¶12. The plaintiffs responded affirmatively, and asked for the appropriate paperwork. Id. at ¶13. They submitted the paperwork the next day. Id. at ¶14. On January 18, 2016 (about two months later), the defendant requested new copies of the plaintiffs' bank statements, indicating that the copies the plaintiffs previously had provided were not legible. Id. at ¶17. The plaintiffs provided the new bank statements by January 21, 2016. Id. at 18. In a letter dated February 15, 2016, the defendant denied the loan modification request. Id. at ¶23; see Dkt. No. 1-1. The letter stated that the plaintiffs had been evaluated for several different loan modification options. Dkt. No. 1-1 at 2. The letter went on to give specific reasons why the plaintiffs were denied— mostly due to their failure to meet certain eligibility criteria. Id.

Throughout this chain of events, the defendant repeatedly rescheduled the hearing on its motion to confirm sale. Dkt. No. 14 at ¶¶11, 15, 21, 22. The plaintiffs filed this suit on November 18, 2016. Dkt. No. 1. The Wisconsin court confirmed the sale on November 28, 2016. Dkt. No. 17 at 2.

## III.     JURISDICTION

The first cause of action alleges that the defendant acted contrary to 26 U.S.C. §2605(f) and 12 C.F.R. §1204.41—a federal statute and a federal regulation. Dkt. No. 14 at 5. This court has jurisdiction over that cause of

2

action under 28 U.S.C. §1331. The amended complaint asks the court to exercise supplemental jurisdiction over the state law causes of action under 28 U.S.C. §1367. Dkt. No. 14 at 1. If the plaintiffs' federal question claim survives, §1367 would give the court jurisdiction over the state law claims, should the court choose to exercise it.

**IV.    ANALYSIS**

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009)(quoting Fed. R. Civ. P. 8(a)(2)). Under this standard, "a plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)(citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**V.    DISCUSSION**

In their first cause of action, the plaintiffs allege "violation of loss mitigation regulations." Dkt. No. 14 at 3. They allege that the defendant did not exercise due diligence in collecting the documents needed for the plaintiffs' modification application, and that it misapplied the "FNMA HAMP" program

3

guidelines. Id. at 3-4. (While the plaintiffs do not decode this alphabet soup, the court assumes that they refer to the Federal National Mortgage Association, also known as "Fannie Mae," and its Home Affordable Modification Program, known as "HAMP.") They allege that the defendant's actions (or inaction) violated 26 U.S.C. §2605(f) and 12 C.F.R. §1024.41. Dkt. No. 14 at ¶25.

The second cause of action alleges equitable estoppel, asserting that the plaintiffs relied on the defendant's representation that it would review their modification application in a timely manner. Id. at ¶¶36-38. The third cause of action alleges that the defendant interfered with their contract with Fannie Mae/FNMA. Id. at ¶¶40-45. Finally, the plaintiffs allege that the defendant violated the mortgage banker regulations of Wis. Stat. §224.77. Id. at ¶¶ 47-51. They ask for compensatory, statutory, punitive and other damages, as well as costs and fees. Id. at p. 14.

> A. First Cause of Action—Violation of Federal Loss Mitigation Regulations

In its motion to dismiss, the defendant first argued that HAMP—the guidelines of which the plaintiffs alleged that the defendant had violated—does not provide a private right of action. Dkt. No. 16 at 6. The defendant is correct, and the plaintiffs clarified in their opposition brief that they are not suing under HAMP. Dkt. No. 17 at 2.

The defendants next argue that 12 C.F.R. §1024.41 (one of the implementing regulations of the Real Estate Settlement Procedures Acts, or "RESPA," 12 U.S.C. §2601 *et seq.*) does not apply to the plaintiffs' situation. Dkt. No. 16 at 7. Section 1024.41(g) of 12 C.F.R. prohibits a servicer from

4

moving for foreclosure judgment or order of sale, or conducting a foreclosure sale, "if a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale . . . ."[1] Section 2605(f) of Title 26 gives a borrower the right to sue for damages if a servicer violates this regulation. The defendant argues that 12 C.F.R. §1024.41 does not provide relief to borrowers who file their loss mitigation applications *after* a foreclosure sale, because the regulation does not impose upon servicers any post-foreclosure sale obligations. Dkt. No. 16 at 7.

The plaintiffs do not dispute that they submitted their loss mitigation application after the sheriff's sale had taken place. Dkt. No. 17 at 5. Instead, they argue that 12 C.F.R. §1024.2—the definition section of the RESPA implementing regulations—does not provide a definition of the phrase "foreclosure sale." Id. at 4. They urge the court to look to Wisconsin law, and to conclude that a "foreclosure sale" under §1024.41 must be a "complete foreclosure action[]" as defined by Wisconsin law. Id.

In support of their argument, the plaintiffs cite the Seventh Circuit's decision in Colon v. Option One Mortgage Co., 319 F.3d 912 (7th Cir. 2003). Colon involved the appeal of a bankruptcy decision; the question was whether, "under § 1322(c)(1) of the United States Bankruptcy Code, a Chapter 13 plan may cure a default on a debtor's principal residence when the petition and plan were filed after the residence was sold at a foreclosure sale, but prior to

---

[1] The regulation provides certain exceptions not applicable here.

confirmation of the sale in accordance with the Illinois Mortgage Foreclosure Law." Id. at 916. Section 1322(c)(1) allows a debtor in bankruptcy to cure the default on mortgage payments up until the point at which her home has been "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." Id. at 917 (quoting 11 U.S.C. §1322(c)(1). The Colon court had to decide whether, under the Illinois foreclosure law, the appellant's home had been "sold at a foreclosure sale that [was] conducted in accordance with applicable nonbankruptcy law" when the foreclosure sale took place before she filed for bankruptcy, but the confirmation of the sale had not. Id. at 916. The Colon court held that "[a]fter our study of Illinois foreclosure law, we cannot conclude that the convergence of § 1322(c) and Illinois foreclosure law provides anything like an absolute right to cure a default up until the time of the confirmation hearing." Id. at 920.

The plaintiffs contend that "[t]his holding has broader application to statutes such as 12 C.F.R. §1024.41," and ask the court to apply Wisconsin law to define the term "foreclosure sale" in the regulation. Dkt. No. 17 at 4. The court declines to read the Colon decision so broadly. Section 1322(c)(1) of the Bankruptcy Code modifies the phrase "foreclosure sale" with the words "that is conducted in accordance with applicable nonbankruptcy law." It was that modifying language that the Colon court found "require[d] deference to state mortgage law on the scope of any right to cure after the sale." Colon, 319 F.3d at 920. In contrast, §1024.41 does not modify the phrase "foreclosure sale" at all.

6

Indeed, the language of 12 C.F.R. §1024.41 mitigates against the plaintiffs' argument that the regulation's definition of "foreclosure sale" should vary depending on state law procedures governing the finalizing of foreclosure proceedings. Section 1024.41(b)(2)(i) requires a servicer to review a loss mitigation application if the servicer receives the application forty-five days or more before a foreclosure sale. Section 1024.41(c)(1) requires a servicer to evaluate a borrower for loan modification options if the servicer received the completed modification packet "more than 37 days before a foreclosure sale." Section 1024.41(g) expressly says that the servicer may not "move for foreclosure judgment or order of sale, or conduct a foreclosure sale," if the borrower has submitted the loss mitigation application more than thirty-seven days "before a foreclosure sale . . . ." Each of these sections ties the mortgage servicer's requirements to a date certain—the date of the foreclosure sale. State laws, including Wisconsin's, require notice of foreclosure sales. Thus, the identifiable, known date from which servicers can measure the deadlines in 12 C.F.R. §1024.41 is the date of the foreclosure sale—in Wisconsin, the sheriff's sale.

Further, the regulation prohibits a servicer from "conducting" a foreclosure sale if it received an application more than thirty-seven days prior. A servicer cannot "conduct" an order confirming a sheriff's sale. The only procedure the servicer can "conduct" is the sheriff's sale. If this court were to adopt the plaintiffs' definition of "foreclosure sale," and define it as a sheriff's sale that has been confirmed by a court, then servicers could "conduct" a

7

sheriff's sale even though the borrower had filed a loss mitigation application more than thirty-seven days before the sale. Such an outcome contradicts the language of the regulation, and the outcome runs counter to the regulation's purpose of preventing "dual tracking"—"situations in which the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options." Gresham v. Wells Fargo Bank, N.A., 642 Fed. Appx. 355, 359 (5th Cir. 2016) (not selected for publication).

Even if the court were to accept the plaintiffs' invitation, and look to Wisconsin law for a definition of "foreclosure sale," the plaintiffs would not prevail. The plaintiffs first cite Shuput v. Lauer, 109 Wis. 2d 164, 171 (1982) for the proposition that "complete foreclosure actions follow two steps: 1.) the judgment of foreclosure and sale; and 2) the proceedings after judgment, including the sale itself, judicial confirmation, and the computation of deficiency." Dkt. No. 17 at 4. That proposition is correct, as far as it goes, but Shuput held that it is the foreclosure *action* which has two steps, not the sheriff's sale. The Supreme Court explained that the court's "judgment of foreclosure and sale" determines the parties' legal rights; the post-judgment proceedings, including the sheriff's sale, "carry into effect and enforce the judgment of foreclosure and sale." Id. Nowhere does Shuput provide that the definition of a "sale" includes the confirmation order.

The plaintiffs next cite Family Sav. & Loan Ass'n v. Barkwood Landscaping Co., Inc., 93 Wis. 2d 190 (1980) for the proposition that Wisconsin law requires that a sheriff's sale be confirmed, and that until it is,

8

the court retains its authority to review the proceedings. Dkt. No. 17 at 4-5. The issue before the Barkwood court was the question of "the trial court's authority to vacate an earlier order confirming the sheriff's sale on foreclosure and to order a new sale." Barkwood, 93 Wis. 2d at 194. The Court concluded that a trial court does have the authority to set aside a sheriff's sale. Id. at 202-203. That holding—determining whether a Wisconsin court has the authority to set aside a sheriff's sale—does not support a finding that a sheriff's sale must be confirmed to constitute a "foreclosure sale."

The plaintiffs cite only one case that arguably supports their argument that in Wisconsin, there is no "sale" absent a confirmation order: Security Bank v. Sechen, 288 Wis. 2d 168 (Wis. Ct. App. 2005). Dkt. No. 17 at 5. The question before the Court of Appeals in Security Bank was whether homeowners had a right to redeem foreclosure property after the sheriff's sale but before confirmation. Sechen, 288 Wis. 2d at 171-172. The court held that §846.13 (which allows a mortgagor to redeem property before sale) and §846.17 (which requires that after a sheriff's sale, the sheriff must execute a deed to the purchaser, and indicates that the deed vests title in the purchaser upon confirmation of the sale), "read together, establish a mortgagor's right to redeem foreclosed property any time prior to sale, and 'sale' occurs upon confirmation." 288 Wis. 2d at 172. The Sechen court reasoned that "[t]he statutes are clear that only upon confirmation does title vest in the purchaser and extinguish the mortgagor's right of redemption." Id.

Security Bank defined a "sale" as taking place upon confirmation in the context of setting boundaries on the mortgagor's redemption rights. The Wisconsin Supreme Court has not adopted that definition, and this court is not aware of a decision that extends that definition to other contexts. To adopt that same definition in the context of a regulation designed to prevent servicers from pursuing foreclosure when a borrower has timely applied for loss mitigation would gut the purposes of RESPA's loss mitigation regulations.

The court declines to define "foreclosure sale" under §1024.41 as a Wisconsin sheriff's sale confirmed by court order. The court grants the defendant's motion to dismiss the plaintiffs' first cause of action.

B. State Law Causes of Action

The plaintiffs' remaining causes of action—equitable estoppel[2], interference with contract, and violations of the mortgage banker regulations of Wis. Stat. §224.77—are state law claims. The plaintiffs asked the court to exercise supplemental jurisdiction over these claims. The court declines.

Section 1367 allows a federal district court to exercise supplemental jurisdiction over state law claims only if the court has original jurisdiction. Here, the plaintiffs asserted that the court's jurisdiction arose from a federal question—the allegations that the defendant violated the provisions of 12 C.F.R. §1024.41. Because the court is dismissing that federal cause of action, the court declines to exercise supplemental jurisdiction under the plaintiffs'

---

[2] Under Wisconsin law, equitable estoppel may be used only as a shield against a claim, not as a claim in its own right. Schuetta v. Aurora Nat. Life Assur. Co., 30 F.Supp.3d 800, 803 (E.D. Wis. 2014).

state claims. See 28 U.S.C. §1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—the district court has dismissed all claims over which it has original jurisdiction . . . .")

The court is aware that it can have jurisdiction over state law claims if the parties are diverse and the amount in controversy exceeds $75,000. See 28 U.S.C. §1332. While the plaintiffs did not assert diversity jurisdiction, the amended complaint indicates that the plaintiffs are residents of Wisconsin, and that the defendant has its principal place of business in Pennsylvania. Dkt. No. 14 at 1. This is insufficient for the court to find that it has diversity jurisdiction. The defendant is an LLC; in order for the court to determine whether there is full diversity in cases involving a limited liability corporation, it must know the citizenship of the LLC and of each of its members. See Civ. L. R. 8; see also, Thomas v. Guardsmark, LLC, 487 F.3d 531, 534 (7th Cir. 2007) ("Consequently, an LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the complaint or notice of removal was filed, and, if those members have members, the citizenship of those members as well."). The court does not have that information, nor does it have any information about the amount in controversy.

Because the court declines to exercise supplemental jurisdiction over the state law claims, and because the plaintiffs have not pled diversity jurisdiction,

the court will dismiss the remaining causes of action.

## VI. CONCLUSION

The court **GRANTS** the defendant's motion to dismiss. Dkt. No. 15. The court **ORDERS** that the case is **DISMISSED**.

The court **DECLINES** to exercise supplemental jurisdiction over the plaintiff's state law claims.

Dated in Milwaukee, Wisconsin this 3rd day of August, 2017.

                    **BY THE COURT:**

                    _____
                    **HON. PAMELA PEPPER**
                    **United States District Judge**